FILED
BILLINGS, MT

2006 APR 21  AM 11 46

PATRICK E. DUFFY, CLERK

BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| MARLON CAMARILLO, | Cause No. CV 05-70-BLG-RWA |
| Petitioner, | |
| vs. | FINDINGS AND RECOMMENDATION |
| | OF U.S. MAGISTRATE JUDGE |
| MIKE MAHONEY, Warden, | |
| Montana State Prison, | |
| Respondent. | |

On May 13, 2005, Petitioner Marlon Camarillo applied to proceed *in forma pauperis* with this action for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254.  Camarillo is a state prisoner proceeding *pro se*.

On October 20, 2005, the Court ordered Camarillo to show cause why his case should not be dismissed with prejudice on the grounds that he failed to file his federal habeas petition within the one-year statute of limitations, 28 U.S.C. § 2244(d).  *See* Order of Oct. 20 (doc. 4) at 4-7.  On December 2, 2005, Camarillo responded.

## I. Background

On October 31, 1998, Camarillo and two other youths broke into a home in Billings.  Camarillo sexually assaulted the woman who

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 1

lived in the home.  He also shot and killed a man who arrived at the home while the break-in was in progress.  He was charged in Montana's Thirteenth Judicial District Court (Yellowstone County). *See Camarillo v. State*, 107 P.3d 1265, 1266 ¶ 5 (Mont. 2005).

On September 29, 1999, Camarillo pled guilty to deliberate homicide, aggravated burglary, and robbery.  On January 10, 2000, he was sentenced to serve seventy years on the homicide count, with an additional ten-year consecutive term because he used a gun, and forty years on the robbery and burglary counts, concurrent with each other and with the homicide sentence.  He did not appeal.

In March 2003, Camarillo filed a petition for postconviction relief in the trial court. He argued that his eighty-year sentence was illegal because, as a juvenile, he had to be sentenced to the custody of the Department of Corrections ("DOC"), *see* Mont. Code Ann. § 41-5-206(6) (1997), and because commitments to DOC custody were limited to five years, *see id.* § 46-18-201(1)(e).[1]  Sometime in 2003, the trial court denied the petition.

Camarillo appealed.  On December 17, 2004, the Montana Supreme

---

[1]   Camarillo would actually have been sentenced under Mont. Code Ann. § 46-18-201(3)(d) (1999), because certain amendments to the 1997 statute became effective on April 28 or October 1, 1999, and applied to persons sentenced after those dates.  However, even if the 1999 statute applied, it would not help Camarillo.  It distinguishes between adult offenders and juveniles tried as adults.  *Compare id.* § 201(3)(d)(i) *with id.* § 201(3)(d)(ii). Thus, the result reached in the analysis below would be the same under either the 1997 or the 1999 statute.

Court, relying on *Peña v. State*, 100 P.3d 154 (Mont. 2004), held that Camarillo's postconviction petition was time-barred under state law.[2] *See* Order at paras. 14-19, *Camarillo v. State*, No. 03-496 (Mont. Dec. 17, 2004) (unpublished order).   Previously, in other cases, the court had sometimes held that a challenge to the legality of a sentence was a challenge to the trial court's subject-matter jurisdiction and so could be raised at any time. *See, e.g.*, *State v. Moorman*, 928 P.2d 145, 149 (Mont. 1996); Order at para. 5, *Thompson v. Twenty-First Jud. Dist. Court*, No. 03-525 (Mont. Sept. 23, 2003), *pet. for reh'g granted and opinion vacated*, Order at para. 5, No. 03-525 (Mont. Nov. 18, 2003) (denying writ of supervisory control).   In *Peña*, the court repudiated *Moorman* and its reasoning in *Thompson* and held:

> Whether a district court commits a statutory error in imposing a sentence must not be confused with the question of whether the court had the 'power' or 'capacity' to impose the sentence in the first instance. An error in sentencing does not divest a district court of subject matter jurisdiction over the case before it.

*Peña*, 100 P.3d at 159-60, ¶ 22.  Consequently, in Camarillo's case, the court held not only that Camarillo's challenge to the sentence

---

[2]    In his response to the Order of October 20, Camarillo asserts that he had five years to file a postconviction petition because the law in effect at the time he committed the offense, in 1998, should have controlled.   Even if 1998 law should have applied, Camarillo is mistaken about the effect of that law.   The one-year statute of limitations on state postconviction petitions became effective on April 24, 1997, more than a year before Camarillo committed the crimes to which he pled guilty.  *See* Mont. Code Ann. § 46-21-102(1) (1997); 1997 Mont. Laws ch. 378, § 4.

should have been brought on direct appeal, *see* Mont. Code Ann. §
46-21-105(2) (1997), but also that it was time-barred under the
one-year state statute of limitations, *id.* § 46-21-102(1)(a)
(1997).

On January 31, 2005, the Montana Supreme Court withdrew its
unpublished order of December 17, 2004.  On February 15, 2005, the
court issued another opinion, still holding that Camarillo was
barred by the direct-appeal rule and by the one-year state statute
of limitations.  *See Camarillo*, 107 P.3d at 1268 ¶¶ 18-19.

Camarillo filed his federal habeas petition in this Court on
May 13, 2005.

## II. Camarillo's Allegations

Camarillo claims, first, that his sentence was illegal because
he was committed to the custody of the DOC and the statute that
governed his sentencing limited such commitments to five years.
*See* Supp. Pet. at 2-3.[3]

Second, Camarillo claims that the trial court lacked
jurisdiction to try him as an adult because the "legal guidelines
pertaining to same were not followed."  *Id.* at 3.  He also asserts
that the trial court lacked jurisdiction to "charge" a weapons
enhancement under Mont. Code Ann. §§ 46-18-221 and -222 (1997).

---

[3] Camarillo submitted the Court's form petition, but instead
of setting forth any grounds for relief as the form asked, he
referred to an attached document.  That document is referred to as
the Supplemental Petition, or "Supp. Pet."

*Id.* at 8.

Third, Camarillo contends that he has been "accused of an act of sexual misconduct . . . unjustly by the news media" in violation of Mont. Code Ann. § 45-5-203 and -204 and the Eighth "et al" Amendments, and that this has affected his chances of parole.   *Id.* at 3-4, 8-9.

Fourth, Camarillo claims that the Montana Supreme Court was racially biased against him and biased against him because of the media's accusation of sexual misconduct.  As evidence, he contends that the court granted habeas relief in a case almost identical to his.  *Id.* at 9-10.

## III. Analysis

Since the time that Camarillo was ordered to show cause why his case should not be dismissed on the basis of the federal statute of limitations, it has come to the Court's attention that the substantive sentencing question presented in his petition has been decided by the Montana Supreme Court, albeit in unpublished opinions.   Because it is more efficient to proceed to the merits rather than deciding the statute of limitations issue, that is what the Court will do.

### A. Sentencing Issue

In *Peña*, the Montana Supreme Court held that a trial court's subject-matter jurisdiction is not stripped away as a result of its imposition of an erroneous sentence.  *See Peña*, 100 P.3d at 356 ¶¶

24-25.   That is squarely a matter of the interpretation of the
state courts' jurisdiction under state law.   There is no federal
issue in that determination and so no foothold for federal habeas
relief.   *See* 28 U.S.C. § 2254(a).

So far as this Court is aware, Camarillo could obtain federal
habeas relief on the grounds that his sentence violated state law
only if he was deprived of a "substantial and legitimate
expectation that he will be deprived of his liberty only to the
extent" provided by state law, *see Hicks v. Oklahoma*, 447 U.S. 343,
346, (1980), or, to put it another way, only if Camarillo was an
"isolated defendant" who was deprived of "the benefit of a state
law that applies to everyone else," *Fetterly v. Paskett*, 15 F.3d
1472, 1475 (9th Cir. 1994) (Kozinski, J., dissenting from denial of
reh'g en banc).

Camarillo cannot make that showing.[4]   In *White v. MacDonald*,
No. 04-023 (Mont. Mar. 2, 2004), the Montana Supreme Court decided

---

[4]   Generally, judicial interpretation of *Hicks* has focused on
the procedures by which state courts render decisions – a sensible
course of interpretation, given the *Hicks* Court's reliance on
procedural due process.   *See, e.g.*, *Murtishaw v. Woodford*, 255 F.3d
926, 969-71 (9th Cir. 2001) (holding, where state's highest court
had already found that trial court sentenced defendant under wrong
statute, that imposition of death sentence under statute containing
mandatory language violated federal due process); *Walker v. Duncan*,
50 F.3d 670, 672-73 (9th Cir. 1995); *Campbell v. Blodgett*, 997 F.2d
512, 522 (9th Cir. 1992).   However, the Court will give Camarillo
the benefit of the doubt and assume, for the sake of argument, that
a *Hicks*-like argument can be built on substantive state sentencing
laws.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 6

that Mont. Code Ann. § 46-18-201(1)(e) (1997) applies to adult offenders only. *See also* Order at paras. 4-5, *Vandersloot v. Mahoney*, No. 03-692 (Mont. Mar. 24, 2004). While White, Vandersloot, and Camarillo were tried as adults, they were in fact juveniles at the time they committed their crimes of conviction, and all three were sentenced pursuant to Mont. Code Ann. § 41-5-206(6) (1997), which does not limit commitments to Department of Corrections custody to a specific term of years. *See Camarillo*, 107 P.3d at 1266 ¶ 5; Order at paras. 2 & 7, *White*, No. 04-023; Order at para. 4, *Vandersloot*, No. 03-692.

The logic of *White* and *Vandersloot* disposes of the issue here. The other cases cited by Camarillo in his response to the Order of October 20 are inapposite because they did not involve juveniles. *See* Br. Showing Cause and Prejudice (doc. 5) at 4-5. *See also, e.g., Marquez v. Mahoney*, No. 05-270 (Mont. June 21, 2005); *Hanley v. Dep't of Corrections*, No. 04-843 (Mont. Mar. 8, 2005); *Peterson v. Mahoney*, No. 03-739 (Mont. Dec. 16, 2003); *Hester v. Mahoney*, No. 03-367 (Mont. July 15, 2003); *Curry v. Mahoney*, No. 03-258 (Mont. June 19, 2003); *Hunt v. Mahoney*, No. 03-137 (Mont. Apr. 7, 2003); *Knerr v. Mahoney*, No. 03-077 (Mont. Mar. 4, 2003); *Belgarde v. State of Montana*, No. 02-546 (Mont. Nov. 7, 2002).[5] The Court

---

[5] The Court has cross-checked each of these cases with each petitioner's age and date of the offense on the CON Network, http://app.mt.gov/conweb. None of the petitioners was under

is not aware of any decision of the Montana Supreme Court, published or unpublished, that reaches a conclusion different from the same court's decisions in *White* and *Vandersloot* where (1) the defendant was a juvenile at the time the crime was committed, and (2) the defendant was sentenced under 1997 law.   The reasoning of *White* and *Vandersloot* certainly does not violate federal constitutional law; there is nothing unusual about a court's holding that a specific sentencing provision controls over a general provision.

Camarillo is not entitled to relief because he was not treated differently than other juvenile offenders and he had no "substantial and legitimate expectation," based on the provisions of state law, that any sentence would be limited to five years' commitment to the Department of Corrections.   His argument is, essentially, that this Court should interpret Montana law in a particular way, regardless of the Montana Supreme Court's contrary interpretations in the past.   Such an argument is untenable in a federal habeas proceeding.[6]

_____

eighteen at the time the offense was committed.

   [6]   *Cf. Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today we reemphasize that it is not the province of a federal habeas court to reexamine state court determinations on state law questions."); *Wisconsin v. Mitchell*, 508 U.S. 476, 483 (1993) ("There is no doubt that we are bound by a state court's construction of a state statute."); *Hubbart v. Knapp*, 379 F.3d 773, 779 (9th Cir. 2004), *cert. denied*, 543 U.S. 1071 (2005) ("Federal habeas corpus relief is generally unavailable for alleged error in

### B. Trial Court's Jurisdiction

Camarillo asserts that the trial court erred in trying him as an adult and in imposing a ten-year sentencing enhancement for his use of a weapon.   To the extent the weapon enhancement issue depends on the theory that the trial court's imposition of an erroneous sentence stripped the court of jurisdiction, it is not based on federal law.[7]

To the extent that Camarillo contends that the imposition of a ten-year sentence for use of a weapon was precluded by Mont. Code Ann. § 46-18-222(1) (1997), he is mistaken.   Mont. Code Ann. § 46-

the interpretation or application of state law.") (internal quotation marks and citation omitted).   While the Court is not aware of a published Montana Supreme Court decision on the point at issue here, that fact is not helpful to Camarillo's federal claim for relief.

[7]   A weapon enhancement was not, at the time of the proceedings against Camarillo, required to be charged in an information.   Therefore, Mont. Code Ann. § 41-5-106, which provides that no youth may "be charged with or convicted of any crime in any court except as provided in this chapter," has no application here. The weapon enhancement was a sentencing matter, not a matter of the charge or conviction.

Further, the Supreme Court's ruling in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), is not retroactive to cases that were final before its issuance.   *See, e.g.*, *Schriro v. Summerlin*, 542 U.S. 348, 350-51, 358 (2004) (holding that petitioner sentenced to death by judge was not entitled to be resentenced by a jury because *Apprendi* and *Ring v. Arizona*, 536 U.S. 584 (2002), are not retroactive); *Reynolds v. Cambra*, 290 F.3d 1029, 1030 (9th Cir. 2002); *Rees v. Hill*, 286 F.3d 1103, 1104 (9th Cir. 2002); *United States v. Sanchez-Cervantes*, 282 F.3d 664, 671 (9th Cir. 2002). Because Camarillo's conviction was final sixty days after he was sentenced on January 10, 2000, he cannot obtain any benefit from the *Apprendi* line of authority.

18-221(1) (1997) provides:

> A person who has been found guilty of any offense and
> who, while engaged in the commission of the offense,
> knowingly displayed, brandished, or otherwise used a
> firearm ... shall, in addition to the punishment provided
> for the commission of such offense, be sentenced to a
> term of imprisonment in the state prison of not less than
> 2 years or more than 10 years, except as provided in
> 46-18-222.

Mont. Code Ann. § 46-18-222(1) provides that:

> Mandatory minimum sentences prescribed by the laws of
> this state, mandatory life sentences prescribed by
> 46-18-219, and the restrictions on deferred imposition
> and suspended execution of sentence prescribed by
> 46-18-201(1)(b), 46-18-205, 46-18-221(3), 46-18-224, and
> 46-18-502(3) do not apply if:
>
>> (1) the offender was less than 18 years of age
>> at the time of the commission of the offense
>> for which the offender is to be sentenced[.]

Camarillo was not subjected to the mandatory minimum.  He was

subjected to the maximum.  The "exception" in § 222 only permitted

the district court to sentence Camarillo to less than two years for

his use of a weapon, if the court felt that sentence would be

appropriate.   The   exception   did   not   absolve   Camarillo   of

responsibility for using a firearm or prevent the district court

from imposing sentence on that basis.

As to the matter of transfer, Mont. Code Ann. § 41-5-206(3)

provides:

> The   district   court   shall   grant   leave   to   file   the
> information if the court finds that there is probable
> cause to believe that the youth has committed the alleged
> offense and that, considering the seriousness of the
> offense and in the interests of community protection, the

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 10

case should be filed in the district court.

The trial court initially made a determination on these issues at Camarillo's arraignment on November 5, 1998, but it considered only the State's charging document. Counsel for Camarillo prepared an application for a writ of supervisory control based on the trial court's failure to hold an evidentiary hearing. A copy of that application is attached to Camarillo's petition, though it is not clear whether it was filed with the Montana Supreme Court. However, in other documents, Camarillo avers that the State requested a transfer hearing and states that, on May 12, 1999, his counsel waived an evidentiary hearing and stipulated that there was sufficient evidence to support transfer. *See* Mem. in Supp. of Mot. for Post Conviction Relief at 2; Opening Brief of Appellant at 1, ¶¶ 3-4; Order and Mem. re: Pet. for Postconviction Relief at 2.[8] That waiver occurred just over a month after the Montana Supreme Court had issued its decision in *State v. Butler*, 977 P.2d 1000 (Mont. 1999),[9] holding that a youth was entitled to an evidentiary hearing to determine whether the statutory criteria for transfer were met.

_____

[8] Each of these documents is attached to Camarillo's petition (doc. 1).

[9] *Butler* was overruled after the statutory scheme was amended, *see State v. McKee*, 127 P.3d 445 (Mont. 2006). It remains the controlling authority in Camarillo's case, because Camarillo was sentenced under the version of the statute at issue in *Butler*.

In this Court, Camarillo contends only that the "legal guidelines pertaining to" transfer were not followed.  Supp. Pet. at 3.  Based on the documents attached to his petition, he appears to contend that he did not *personally* waive a hearing.  The Court is not aware of any federal authority that would require him *personally* to waive such a hearing.  Camarillo cites none.[10]

Camarillo is not entitled to relief on the grounds that the trial court unconstitutionally transferred him to adult status or imposed the weapon enhancement.

### C. Accusation of Sexual Misconduct

A federal habeas petition is not the proper vehicle to challenge acts of the media.  Nor does Camarillo explain how the media has affected his chances of parole.  It would be difficult to do so, since he will not even be eligible for parole until 2008, at the earliest.  *See* Mont. Code Ann. § 46-23-201(2) (1997).  If he

_____

[10]   *Kent v. United States*, 383 U.S. 541 (1966), speaks of a "waiver order," referring to the juvenile court's "waiver" and relinquishment of jurisdiction to the district court.  The procedure outlined in *Kent* applied only to courts of the District of Columbia.  That procedure is different from Montana's.  "Waiver" is not required in any form under Montana or generally applicable federal law.

Elsewhere in the documents attached to Camarillo's petition, he does not mention counsel's stipulation of May 12, 1999.  *See* Am. Pet. for Post Conviction Relief at 1-2, ¶¶ 3-6 (marked "<u>tryed to file</u>?!").  Again, however, his claim is limited to the contention that he did not *personally* waive an evidentiary hearing.  *See* Mem. in Supp. of Am. Pet. for Post Conviction Relief at 4 ("Marlon ... never stipulated to a waiver of his youth court transfer hearing.").

means that he is required to complete sex offender treatment, he has wholly failed to show – or even assert – that the requirement was based on the media and not on other information about the case, such as police reports.   There is no basis for federal habeas relief here.

### D. Bias of the Montana Supreme Court

As for Camarillo's last grounds for relief, the Montana Supreme Court did not grant habeas relief in a case comparable to Camarillo's.  He does not identify the case to which he refers, but he identifies the petitioner as female. *See* Supp. Pet. at 10.  One of the exhibits to his Petition, Ex. 24B, appears to be a newspaper account of a sentence reduction given to Shawna Malaski.   The exhibit shows that Malaski was 31 at the time of the article's appearance and was originally sentenced "for four counts of felony forgery in 1997."  The CON Network, *see* note 5 *supra*, shows that Malaski was born in 1973.  She was at least 23 in 1997 – not a juvenile.   Therefore, Malaski's case is not comparable to Camarillo's.  *See supra* at 6-8.  His contention that the Montana Supreme Court was biased against him, on racial or any other grounds, is insupportable.

Moreover, for what it may be worth, any error the Montana Supreme Court makes in deciding a case – and none occurred here – provides no basis for habeas jurisdiction in the federal court.  28 U.S.C. § 2254(a) authorizes the federal courts to "entertain an

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 13

application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Even if Camarillo could show that the Montana Supreme Court made a mistake or somehow violated his rights, he would not be entitled to habeas relief unless he proved that his underlying *conviction or sentence* violated federal law. In other words, Camarillo's custody does not arise from the Montana Supreme Court's decision or procedures; it arises from his conviction and sentence for deliberate homicide, aggravated burglary, and robbery. For this reason, too, Camarillo's claims regarding the Montana Supreme Court's decision must be denied.

## IV. Certificate of Appealability

### A. Governing Standards

Pursuant to 28 U.S.C. § 2253(c), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), "[a] certificate of appealability ["COA"] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *See Hohn v. United States*, 524 U.S. 236 (1998); *Lambright v. Stewart*, 220 F.3d 1022, 1024 (9th Cir. 2000). The standard of a "substantial showing" can be satisfied on an issue-by-issue basis. *Lambright*, 220 F.3d at 1024 (citing 28 U.S.C. § 2253(c)(3)).

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 14

> [I]n order to make a substantial showing of the denial of
> a federal right a petitioner . . . "must demonstrate that
> the issues are debatable among jurists of reason; that a
> court could resolve the issues [in a different manner];
> or that the questions are 'adequate to deserve
> encouragement to proceed further.'"

*Lozada v. Deeds*, 498 U.S. 430, 432 (1991) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).  *See also Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.").  Thus, a petitioner may obtain a COA even if he does not establish that he will prevail on the merits.  The COA inquiry seeks only to prevent frivolous appeals from wasting judicial resources, while still affording defendants an opportunity to show potential for merit.  *Lambright*, 220 F.3d at 1025.  Any doubt as to whether a petitioner has met the standard is resolved in his favor.  *Id.*

Finally, the COA must indicate which issues satisfy the required showing, 28 U.S.C. § 2253(c)(3), and the Court must "state why a certificate should *not* issue."  Fed. R. App. P. 22(b)(1) (emphasis added).  The Court need not explain why a certificate *should* issue.  *Id.*

**B. Discussion**

Camarillo's first claim for relief depends entirely on his allegation that his eighty-year sentence violates state law.  Because the Montana Supreme Court has determined in other cases

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 15

involving juveniles that it does not, Camarillo cannot demonstrate a violation of his federal right to due process. None of the cases to which Camarillo compares his own involved persons who were juveniles at the time they committed the crimes for which they were sentenced. Camarillo's juvenile status was the basis on which the Montana Supreme Court decided his case.

Camarillo fails to identify any procedural error in the trial court's transfer hearing and misunderstands the meaning of the statute that authorized the trial court to sentence him for use of a weapon. His remaining grounds for relief – media coverage that is affecting his chances of parole and the Montana Supreme Court's alleged bias against him – are frivolous, for the reasons set forth above.

Because Camarillo has not made a showing with any substance to it that he was deprived of a constitutional right, he is not entitled to a COA.

**RECOMMENDATION**

Based on the foregoing, the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), **RECOMMENDS** that Camarillo's Petition (doc. 1) be DENIED on the merits. A certificate of appealability should be DENIED.

The Clerk of Court shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the Petitioner. Petitioner is advised that, pursuant to 28 U.S.C. §

636, any objections to these findings must be filed or delivered to prison authorities for mailing within twenty (20) calendar days after the entry date reflected on the Notice of Electronic Filing, or objection is waived.

   <u>Camarillo must keep the Court informed of his current mailing address while his case remains pending</u>.

   DATED this 21st day of April, 2006.


                                   Richard W. Anderson
                                   United States Magistrate Judge


FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 17